1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10   ENRIQUE NICHOLAS GODOY,              CASE NO. 3:13-cv-0194-GPC-BGS

11                          Plaintiff,    **ORDER GRANTING IN PART AND
                                          DENYING IN PART DEFENDANT**
12        vs.                             **OFFICER STEADMON'S MOTION
                                          FOR SUMMARY JUDGMENT**
13
                                          **[ECF No. 30]**
14   CALIFORNIA HIGHWAY PATROL
     OFFICER J. BROCK, individually
15   and in his official capacity;
     CALIFORNIA HIGHWAY PATROL
16   OFFICER STEADMON, individually
     and in his official capacity; THE
17   STATE OF CALIFORNIA; and
     DOES 1 through 20, inclusive,
18
                          Defendants.
19

20                       **I. INTRODUCTION**

21        Before the Court is Defendant California Highway Patrol Officer Steadmon's

22   ("Officer Steadmon") Motion for Summary Judgment. (ECF No. 30.) Plaintiff Enrique

23   Nicholas Godoy ("Plaintiff") filed an opposition. (ECF No. 33.) Officer Steadmon

24   replied, including a request for judicial notice. (ECF Nos. 36, 36-1.)

25        Upon review of the moving papers, admissible evidence, oral argument, and

26   applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Officer

27   Steadmon's Motion for Summary Judgment.

28   / /

## II. PROCEDURAL BACKGROUND

On January 1, 2013, Plaintiff filed a complaint against California Highway Patrol Officer J. Brock ("Officer Brock"), Officer Steadmon, the State of California, and Does 1 through 20 alleging causes of action for civil rights violations, failure to supervise, negligence, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. (ECF No. 1.) On May 1, 2013, the Court granted Officer Brock, Officer Steadmon, and the State of California's motion to dismiss. (ECF No. 11.) Plaintiff was given leave to amend five of his claims against Officers Brock and Steadmon. (Id.) On May 10, 2013, Plaintiff filed a first amended complaint ("FAC"). (ECF No. 12.)

On May 23, 2014, Officer Steadmon filed this motion for summary judgment. (ECF No. 30.) On July 7, 2014, Plaintiff filed a response in opposition to Officer Steadmon's motion. (ECF No. 33.) On July 21, 2014, Officer Steadmon replied to Plaintiff's opposition, (ECF No. 36), and included a request for judicial notice, (ECF No. 36-1). On September 5, 2014, oral argument was heard on this motion. (ECF No. 37.)

## III. FACTUAL BACKGROUND

On January 26–27, 2012, Plaintiff was living in an apartment in Escondido, California with his wife, his son, and Mario Lozano ("Lozano"). (Godoy Dep. 8:3–9:4.) On the evening of January 26, 2012, Plaintiff was drinking at his apartment and by 7:00 p.m. had consumed six 12-ounce bottles of beer. (Id. 12:5–6, 13:24–14:3.) At approximately 1:00 a.m. on January 27, 2012, Plaintiff drove from his Escondido apartment to the Stagecoach Bar in Vista, California in his and his wife's "glacier blue" Honda CR-V. (Id. 7:10–19, 8:8–9:4, 14:21–15:8, 39:13–14.) He arrived at the Stagecoach Bar at approximately 1:20 a.m. (Id. 16:2–3.) While at the Stagecoach Bar, Plaintiff drank one pint of Stone beer. (Id. 15:23–25.) At approximately 2:05 a.m. on January 27, 2012, Plaintiff left the Stagecoach Bar and drove to his Escondido apartment. (Id. 16:4–8.) At approximately 2:20 a.m. or 2:25 a.m. on January 27, 2012,

Plaintiff arrived at his apartment. (Id. 16:7–8.) Over the next hour, Plaintiff drank four 12-ounce Pacifico beers. (Id. 16:19–20.)

At around 2:30 a.m. on January 27, 2012, Officer Brock and Officer Steadmon, California Highway Patrol Officers, responded to a call reporting a hit-and-run collision on eastbound State Route 78 at the Interstate 15 interchange. (Steadmon Decl. ¶ 1-2.) At the collision scene, the officers were informed of two separate 911 calls about a suspected drunk driver: one placed a few minutes prior to the hit-and-run collision and another placed a few minutes after the hit-and-run collision. (Id. ¶ 2–3; Brock Dep. 24:16–25, 31:5–21.) Both calls described the "same lighter-colored or silver vehicle" with the same license plate number. (Steadmon Decl. ¶ 2–3.)

Based on the times and locations reported in the two 911 calls, Officers Brock and Steadmon believed that the license plate referenced in the two 911 calls was the best potential suspect vehicle for the hit-and-run collision. (Id. ¶ 4–5.) The officers ran the license plate number and discovered that the plate was registered to Plaintiff and/or Plaintiff's wife. (Id. ¶ 5.) The officers then drove to Plaintiff's apartment. (Id.) The officers arrived at Plaintiff's apartment complex at approximately 3:30 a.m., but did not see a vehicle matching the suspect vehicle's description in the complex's parking lot. (Id.; Godoy Dep. 18:3-6.) The officers proceeded to knock on Plaintiff's apartment door. (Steadmon Decl. ¶ 6.) After receiving no initial response, the officers walked away from Plaintiff's apartment at which point Plaintiff and Lozano opened the door. (Id.) Plaintiff was only wearing boxer shorts and appeared to Officer Steadmon to weigh at least 225 pounds. (Id. ¶ 7.)

Officers Brock and Steadmon returned to the doorway, after which Officer Brock introduced himself and asked Plaintiff and Lozano to step outside to answer questions. (Godoy Dep. 32:10–13.) Lozano stepped outside but Plaintiff did not. (Id. 30:17–24, 32:14.) Officer Brock stated that he and Officer Steadmon were investigating a felony hit-and-run collision. (Id. 32:14–16.) Officer Brock asked Plaintiff where Plaintiff's car was. (Id. 33:3–8.) Plaintiff pointed to the officers' patrol car and "sarcastic[ly]" said

that the patrol car was Plaintiff's "Rolls-Royce." (Id. 33:8–12.) Officer Brock again asked Plaintiff to step outside and Plaintiff refused, stating that Officer Brock could ask Plaintiff questions without Plaintiff stepping outside. (Id. 34:12–16.) Officer Brock asked Plaintiff whether Plaintiff owned a silver Honda CR-V; Plaintiff stated that he owned a Honda CR-V but that it was not silver. (Id. 35:7–9.) Plaintiff's breath smelled strongly of alcohol and his eyes were red and watery. (Steadmon Decl. ¶ 11.)

Officer Brock told Plaintiff that if Plaintiff did not comply, Officer Brock could enter Plaintiff's apartment and take Plaintiff outside. (Id. ¶ 12.) Officer Brock then took hold of Plaintiff's wrist and tried to pull Plaintiff outside. (Godoy Dep. 35:15–17.) Plaintiff pulled away and told Officer Brock that he could not pull Plaintiff outside. (Id. 36:1–7.) Plaintiff eventually broke loose from Officer Brock and again told Officer Brock that he could not pull Plaintiff outside. (Id. 36:8–1, 42:18–43:4.) Plaintiff then went into his bedroom, turned on the light, put on his pants, and returned to the front door. (Id. 44:4–12.) After returning to the front door, Plaintiff attempted to go back to his bedroom. (Id. 43:23–25.) As Plaintiff walked away from the front door, Officer Steadmon attempted unsuccessfully to gain a control hold on Plaintiff. (Steadmon Decl. ¶ 17.) Plaintiff does not recall feeling Officer Steadmon's attempted control hold. (Godoy Dep. 46:14–47:3.)

Officer Brock then asked Officer Steadmon for Officer Steadmon's electroshock weapon and Officer Steadmon gave it to Officer Brock. (Steadmon Decl. ¶ 19.) After receiving the electroshock weapon, Officer Brock fired it at Plaintiff. (Godoy Dep. 65:24–66:1.) Officer Brock proceeded to administer several more shock cycles to Plaintiff after which Officer Steadmon handcuffed Plaintiff. (Id. 49:24–50:3; Steadmon Decl. ¶ 24.) Plaintiff was taken to the Palomar Medical Center where he did not tell the staff about any bruising and did not seek medical treatment. (Godoy Dep. 54:6–24.) Plaintiff was then taken to Vista Detention Facility and charged with resisting arrest. (Steadmon Decl. ¶ 27.)

Plaintiff alleges three causes of action against Officer Steadmon: (1) violation

of 42 U.S.C. § 1983 based on (a) unreasonable seizure in violation of the Fourth Amendment, (b) excessive force in violation of the Fourth Amendment, and (c) deprivation of liberty without due process of law in violation of the Fourth and Fourteenth Amendments; (2) negligent use of force based on both Officer Steadmon's use of force and Officer Brock's use of force; and (3) civil battery based on the use of an electroshock weapon. (FAC.)

## IV. LEGAL STANDARD

**A. Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986); FED. R. CIV. P. 56. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the Court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citing FED. R. CIV. P. 56 (1963)). If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing FED. R. CIV. P. 56 (1963)). In making this determination, the Court must "view [] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**B. Judicial Notice**

A court may take notice of undisputed "matters of public record" subject to judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001) (citing FED. R. EVID. 201; MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986)). Under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b); see also Lee, 250 F.3d at 689.

**V. DISCUSSION**

**A. Judicial Notice**

Officer Steadmon seeks judicial notice of two documents from California v. Godoy, CN301726 (Cal. Super. Ct., Cty. of San Diego, 2012): (1) the Complaint filed February 1, 2012, and (2) the Pre-Disposition Minutes dated June 27, 2012. (ECF No. 36-1.)

Officer Steadmon's two requests for judicial notice are properly noticeable. The complaint and pre-disposition minutes in a state trial court case are matters of public record and are capable of accurate and ready determination. Finding the complaint and

pre-disposition minutes relevant, the Court takes judicial notice of both documents.

**B. 42 U.S.C. § 1983**

42 U.S.C. § 1983 ("§ 1983") creates a remedy for "deprivation of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); 42 U.S.C. § 1983. Plaintiff alleges violations of three rights: (1) not to be deprived of liberty without due process of law under the Fourth and Fourteenth Amendments, (2) to be free from excessive force under the Fourth Amendment, and (3) to be free from unreasonable seizure under the Fourth Amendment. (FAC ¶ 12.)

As an initial matter, Officer Steadmon argues in his reply brief that Plaintiff's underlying criminal conviction bars Plaintiff's § 1983 cause of action, citing Heck v. Humphrey, 512 U.S. 477 (1994). (ECF No. 36, at 4–5.) District courts have broad discretion to consider arguments first raised in a reply brief. Lane v. Dept. of Interior, 523 F.3d 1128, 1140 (9th Cir. 2008) (citing Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1201–02 (9th Cir. 2001). The key issue in assessing whether Heck bars a § 1983 cause of action is whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487; see also Szajer v. City of Los Angeles, 632 F.3d 607, 611 (9th Cir. 2011) (holding that Heck applies to Fourth Amendment claims). If a § 1983 cause of action's success would necessarily imply the invalidation of a conviction, the plaintiff does not have a cause of action under § 1983. Heck, 512 U.S. at 487. However, if a § 1983 cause of action's success "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Id.

Plaintiff pled guilty to "disturbing the peace" pursuant to California Penal Code § 415(2). (ECF No. 36-1.) All other charges against Plaintiff were dropped. (Id.) California Penal Code § 415(2) makes it a crime to "maliciously and willfully disturb[] another person by loud and unreasonable noise." CAL. PENAL CODE § 415. Officer Steadmon does not explain how a judgment in Plaintiff's favor on the § 1983 claims of excessive force or unreasonable seizure would "necessarily imply the invalidity" of

Plaintiff's California Penal Code § 415(2) conviction. See Heck, 512 U.S. at 487. In this case, Plaintiff is alleging that Officer Steadmon used excessive force both in attempting to administer a control hold on Plaintiff and in handcuffing Plaintiff, and that Officer Steadmon unreasonably seized Plaintiff. Neither of these claims, if successful, would invalidate Plaintiff's "disturbing the peace" conviction. As there is no indication that Plaintiff's success on his § 1983 cause of action would "necessarily imply the invalidity" of his state court conviction, Heck does not bar Plaintiff's § 1983 cause of action. See 512 U.S. at 487.

**1. Fourteenth Amendment**

Plaintiff alleges that Officer Steadmon's conduct deprived Plaintiff of liberty without due process of law in violation of the Fourteenth Amendment. (FAC ¶ 12.) However, where a "constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision" and "not under the rubric of substantive due process." Fontana v. Haskin, 262 F.3d 871, 881 (9th Cir. 2001) (quoting Reed v. Hoy, 909 F.2d 324, 329 (9th Cir. 1990)). Thus "[c]laims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard." Id. (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)). This applies "even in cases where plaintiff's complaint alleges violation of both the Fourth Amendment and the Due Process Clause." Zachary v. Cnty. of Sacramento, 2:06-cv-01652-MCE-EFB, 2010 WL 1328892, at *4 (E.D. Cal. Apr. 5, 2010) (citing Graham v. Connor, 490 U.S. 386, 394–95 (1989)). As the conduct that Plaintiff alleges violated Plaintiff's constitutional rights took place before or during the course of an arrest, (see ECF No. 30-1, at 9; ECF No. 33, at 14), the Court will analyze Plaintiff's § 1983 cause of action based on excessive force under the Fourth Amendment's reasonableness standard. See Graham, 490 U.S. at 395.

/ /

/ /

**2. Fourth Amendment**

    **a. Excessive Force**

Claims alleging excessive use of force during an arrest are analyzed under the "Fourth Amendment's 'objective reasonableness' standard." Graham, 490 U.S. at 388, 394–95 ("the 'reasonableness' of a particular [application of force] depends not only on when it is made, but also on how it is carried out") (emphasis and citation omitted). "Under the Fourth Amendment, officers must use such force as is 'objectively reasonable' under the circumstances." Ross v. City of Ontario, 66 F. App'x 93, 95 (9th Cir. 2003) (citing Graham, 490 U.S. at 397). "[T]he essence of the Graham objective reasonableness analysis" is that "'[t]he force which was applied must be balanced against the need for that force: it is the need for force which is at the heart of the Graham factors.'" Liston v. Cnty. of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (quoting Alexander v. City and Cnty. of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)) (emphasis omitted). However, the Court is mindful that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

To determine whether force was reasonable, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Blanford v. Sacramento Cnty., 406 F.3d 1110, 1115 (9th Cir. 2005) (quoting Graham, 490 U.S. at 396). This balancing test considers "the totality of the facts and circumstances in the particular case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham, 490 U.S. at 396).

First, the crime that Officer Brock and Officer Steadmon were investigating is referred to as a "felony hit-and-run." (See Godoy Dep. 32:15–16; Brock Dep. 49:14.) The crime can be charged as either a felony or a misdemeanor, depending on the circumstances. See CAL. VEH. CODE § 20001; CAL. PENAL CODE § 17(b). While both

of the victims of the hit-and-run complained of pain, neither were severely injured or received medical assistance from emergency personnel. (See ECF No. 33-8, at 22.)[1] However, the perpetrator of the hit-and-run had left the scene of an accident where two victims had been hurt. By definition, a hit-and-run violation is a serious crime that requires the immediate attention of police officers to investigate.

Second, when viewed in the light most favorable to Plaintiff, there is no indication that Plaintiff posed an immediate threat to the safety of the officers or others at the time he was walking back to his bedroom and Officer Steadmon attempted to grab him. The lights in the bedroom were on and Plaintiff had not retrieved a weapon during his first trip to the bedroom after the initial altercation with Officer Brock. While Plaintiff did weigh 278 pounds at the time, (Godoy Dep. 12:9–10), Plaintiff's size alone did not create an immediate threat to the officers. In addition, by the time Officer Steadmon applied the handcuffs, several shock cycles had been administered to Plaintiff by Officer Brock, reducing any threat he may have posed.

Third, while Plaintiff alleges that he was not resisting Officer Steadmon's arrest, it is undisputed that Plaintiff was resisting Officer Brock prior to Officer Steadmon's attempt to handcuff Plaintiff. (See Steadmon Decl. ¶ 15.) Thus, even though Plaintiff allegedly did not resist Officer Steadmon's handcuffing, he had still actively resisted Officer Brock shortly before Officer Steadmon's applications of force.

In evaluating the "nature and quality of the intrusion" on Plaintiff's "Fourth Amendment interests," the Court looks to the "type and amount of force inflicted." Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003) (citations omitted). Here, Officer Steadmon's actions were limited to attempting to gain a control hold on Plaintiff that Plaintiff does not recall feeling, (Steadmon Decl. ¶ 17; Brock Dep. 59:22–60:1), and handcuffing a cooperating Plaintiff. (Steadmon Decl. ¶ 24).

Plaintiff argues that any use of force was excessive where the officers lacked

---

[1]As ECF No. 33-8 does not have specific page numbers throughout the document, references to it use the page numbers in its CM/ECF document header.

probable cause and exigent circumstances were absent. (ECF No. 33, at 22); cf. P.B. v. Koch, 96 F.3d 1298, 1303–04 & n.4 (9th Cir. 1996) (where there is no need for force, any force is constitutionally unreasonable). To the extent that Plaintiff predicates his excessive force claim solely on allegations that Officer Steadmon lacked probable cause to make an arrest, the excessive force claim is subsumed within the unlawful arrest claim and fails as a matter of law. See, e.g., Bashir v. Rockdale Cnty., Ga., 445 F.3d 1323, 1332 (11th Cir. 2006) (claim that deputies used excessive force in arrest because they lacked the right to make the arrest is not a discrete excessive force claim and, therefore, fails as a matter of law); Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000) (same); cf. Cortez v. McCauley, 478 F.3d 1108, 1126 (10th Cir. 2007) ("Thus, in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.").

Reviewing Plaintiff's claims under the "objective reasonableness" standard, the Court finds the amount of force used by Officer Steadmon in attempting a control hold and handcuffing Plaintiff was minimal and no greater than reasonably necessary if the arrest was warranted. The government's interest in apprehending the suspected perpetrator of a hit-and-run vehicular collision outweighed the minimal intrusion on the Plaintiff's Fourth Amendment rights by Officer Steadmon. Accordingly, the Court GRANTS Officer Steadmon's motion for summary judgment on Plaintiff's § 1983 cause of action based on excessive force.

### b. Unreasonable Seizure

The Fourth Amendment prohibits unreasonable seizures. See Florida v. Bostick, 501 U.S. 429, 439 (1991). In assessing unreasonable seizure claims, the Court must first determine whether a police encounter is considered a seizure. See Terry v. Ohio, 392 U.S. 1, 16 (1968) ("Our first task is to establish at what point in this encounter the Fourth Amendment becomes relevant. That is, we must decide whether and when

Officer McFadden 'seized' Terry and whether and when he conducted a 'search.'") If the police encounter is deemed a seizure, the Court then assesses whether that seizure was justified. Id. at 19–20.

Plaintiff alleges a § 1983 cause of action against Officer Steadmon for unreasonably seizing Plaintiff in violation of the Fourth Amendment. (FAC ¶ 12.) However, Officer Steadmon does not address this basis for Plaintiff's § 1983 cause of action in his motion for summary judgment. (See ECF No. 30-1, at 12–15.) Accordingly, the Court DENIES Officer Steadmon's motion for summary judgment on Plaintiff's § 1983 cause of action based on unreasonable seizure.

**C. Negligent Use of Force**

**1. Officer Steadmon's Use of Force**

Under California Law, there are four elements to negligence: (1) duty, (2) breach, (3) causation, and (4) damages. Conroy v. Regents of Univ. of Cal, 203 P.3d 1127, 1132 (Cal. 2009) (citation omitted). Additionally, "[a] police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." Edson v. City of Anaheim, 74 Cal. Rptr. 2d 614, 614 (Cal. Ct. App. 1998) (citing CAL. PENAL CODE § 835a).

Though the parties dispute whether Plaintiff was told he was under arrest, (see Godoy Dep. ¶ 51:18–22), both parties agree that Plaintiff was arrested. (See ECF No. 33, at 14.) Officer Steadmon contends that the minimal force used in his attempted control hold and while handcuffing Plaintiff was reasonable. (ECF No. 30-1, at 15.) Plaintiff does not dispute this, and instead premises Officer Steadmon's negligence liability on the force used by Officer Brock. (See ECF No. 33, at 23–24.) As it is undisputed that Officer Steadmon was making an arrest, he is under a duty to use only "reasonable force" to make that arrest. See Edson, 74 Cal. Rptr. 2d at 614. The Court finds that the minimal force applied by Officer Steadmon was reasonable and thus he did not breach a duty owed to Plaintiff through Officer Steadmon's own use of force. Accordingly, the Court GRANTS Officer Steadmon's motion for summary judgment

on Plaintiff's negligent use of force cause of action based on Officer Steadmon's own use of force.

### 2. Officer Brock's Use of Force

Plaintiff alleges that Officer Steadmon "is responsible for the [alleged] unlawful conduct . . . by authorizing . . . or failing to take action to prevent the [alleged] unlawful conduct." (FAC ¶ 8.) While California law generally provides that "a public employee is not liable for any injury caused by the act or omission of another person," except as otherwise provided by statute, see CAL. GOV. CODE § 820.8, there may be liability where "there is a special relationship between the police and either the victim or the third person which gives rise to a responsibility to control the third person's conduct." See Lopez v. City of San Diego, 235 Cal. Rptr. 583, 585 (Cal. Ct. App. 1987). However, under California law there is no duty that an officer "perform a reasonable and adequate investigation." Hucko v. City of San Diego, 224 Cal. Rptr. 552, 553 (Cal. Ct. App. 1986).

Plaintiff argues that Officer Steadmon was negligent in failing to properly investigate whether Plaintiff was the hit-and-run driver before arresting Plaintiff. (ECF No. 33, at 23.) California case law makes clear that there is no such duty. Hucko, 224 Cal. Rptr. at 553. Without a duty, Officer Steadmon cannot be liable under a negligence theory for Officer Brock's subsequent use of force following Officer Steadmon's investigation. Accordingly, the Court GRANTS Officer Steadmon's motion for summary judgment on Plaintiff's negligent use of force cause of action based on Officer Brock's use of force.

### D. Civil Battery

Under California law, civil battery is "any intentional, unlawful contact by one person with the person of another." Ashcraft v. King, 228 Cal. Rptr. 900, 903 (Cal. Ct. App. 1991) (citations omitted). "[U]nlawful" in the context of civil battery is defined as "unconsented to." Id. There are three elements to civil battery: (1) "[d]efendant intentionally did an act which resulted in a harmful or offensive contact with the

plaintiff's person," (2) "[p]laintiff did not consent to the contact," and (3) "[t]he harmful or offensive contact caused injury, damage, loss or harm to the plaintiff." Piedra v. Dugan, 21 Cal. Rptr. 2d 36, 48 (Cal. Ct. App. 2004) (citing Fluharty v. Fluharty, 69 Cal. Rptr. 2d 244, 251 (Cal. Ct. App. 1997)).

Plaintiff alleges that Officer Steadmon "without consent, caused a missile to penetrate plaintiff's body which then conducted electrical energy impulses into plaintiff, causing serious bodily and emotional injury." (FAC ¶ 20.) In his motion for summary judgment, Officer Steadmon asserts, and Plaintiff concedes, that Officer Steadmon did not use an electroshock weapon against Plaintiff. (ECF No. 30-1, at 16; ECF No. 33, at 24.) As Officer Steadmon did not use an electroshock weapon against Plaintiff, Plaintiff cannot prove the "harmful or offensive contact" element necessary to his civil battery cause of action based on the use of an electroshock weapon. Accordingly, the Court GRANTS Officer Steadmon's motion for summary judgment on Plaintiff's cause of action for civil battery with an electroshock weapon.

Finally, in Plaintiff's opposition to Officer Steadmon's motion for summary judgment, Plaintiff attempts to "seek[] leave to amend his complaint to allege the unlawful attempt to administer the control hold on [Plaintiff]" and "false arrest." (ECF No. 33, at 24.) As Plaintiff has sought leave to amend in an opposition rather than in a motion, the Court declines to consider the issue of leave to amend. See Nejo v. Wilshire Credit Corp., 09-cv-879-BEN-JMA, 2010 WL 371906, at *2 (S.D. Cal. Sept. 20, 2010) (declining to consider a request for an expungement order first raised in a reply brief). If Plaintiff wishes to seek leave to amend his complaint, he should file the appropriate motion with this Court.

## VI. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that Officer Steadmon's Motion for Summary Judgment, (ECF No. 30), is **GRANTED** as to Plaintiff's § 1983 cause of action based on excessive force, **DENIED** as to Plaintiff's § 1983 cause of action based on unreasonable seizure, **GRANTED** as to Plaintiff's

1  negligent use of force cause of action, and **GRANTED** as to Plaintiff's civil battery

2  cause of action based on the use of an electroshock weapon.

3  DATED:  September 18, 2014

4

5                                        HON. GONZALO P. CURIEL
                                         United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28